Kevin J. Yourman (147159)
WEISS & YOURMAN
10940 Wilshire Boulevard
24th Floor
Los Angeles, CA 90024
(310) 208-2800
(310) 209-2348 - fax

Joseph H. Weiss
WEISS & YOURMAN
551 Fifth Ave., Suite 1600
New York, NY 10176
(212) 682-3025
(212) 682-3010-fax

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EID HADDAD, on Behalf of Himself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LOUDCLOUD, INC., GOLDMAN SACHS & CO., MORGAN STANLEY & CO. INC., THOMAS WEISEL PARTNERS LLC, EPOCH SECURITIES, INC., ALLEN & COMPANY INC., CIBC WORLD MARKETS CORP., DAIN RAUSCHER INCORPORATED, RAYMOND JAMES & ASSOCIATES, INC., ROBERTSON STEPHENS, INC., WIT SOUNDVIEW CORP., MARC L. ANDREESSEN, BENJAMIN A. HOROWITZ, RODERICK M. SHERWOOD III, WILLIAM V. CAMPBELL, MICHAEL S. OVITZ and ANDREW S. RECHLEFF, <br><br> Defendants. | CASE NO.: <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR THE VIOLATION OF FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, by and through his attorneys, individually and on behalf of the Class described below, upon information and belief based upon, <u>inter alia</u>, the investigation of counsel, which includes, among other things, a review of public announcements made by defendants, Securities and Exchange Commission ("SEC") filings made by defendants, press releases, and

media reports, except as to the paragraph applicable to the named plaintiff which is alleged upon personal knowledge, brings this Complaint (the "Complaint") against defendants named herein, and alleges as follows:

## SUMMARY OF ACTION

1. This is a securities class action on behalf of purchasers of the common stock of Loudcloud, Inc. ("Loudcloud" or the "Company") in an initial public offering (the "Offering") by Loudcloud made pursuant to a registration statement ("Registration Statement") and prospectus ("Prospectus"), declared effective by the SEC on March 8, 2001. The Offering was for 25 million shares of common stock at $6.00 per share for a total of $150 million.

2. The Prospectus was false and misleading because, among other things, it failed to disclose:

- Loudcloud's plans to substantially reduce its work force and to restructure itself shortly after the public offering;
- the fact that the public offering was not raising funds sufficient to enable the Company to reach profitability and accomplish the planned expansion described in the prospectus;
- the imminent cancellation of a major contract to which one of the underwriters was a party; and
- that in order to enable the public offering to go forward undisclosed sales of shares were made to insiders and the selling price of the offering was artificially maintained by the undisclosed sale of part of the offering to insiders.

## JURISDICTION

3. This action arises under Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k.

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v; and Sections 1331 and 1337(a) of the Judicial Code, 28 U.S.C. §§ 1331, 1337(a).

5.      Venue is proper in this District under Section 22 of the Securities Act.  The wrongs alleged in this Complaint occurred, in substantial part, in this District, including the offer and sale of securities and the preparation and dissemination to the investing public of false and misleading information, including a registration statement pursuant to which securities were offered.  In addition, at all relevant times, Lead Underwriters Morgan Stanley Dean Witter and Goldman Sachs & Co., managers for the offering, had their principal offices in and conducted business in this District.

6.      In connection with the acts, conduct, and other wrongs complained of herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

7.      Plaintiff purchased shares of Loudcloud issued in connection with and traceable to the Offering, as set forth in the attached certification, and was damaged thereby.

8.      Defendant Loudcloud is a Delaware corporation with its principal executive offices located in Sunnyvale, California.

9.      The following defendants occupied the positions set forth and each signed the Registration Statement:

      a)    Marc L. Andreessen - Chairman of the Board of Directors and Director.

      b)    Benjamin A. Horowitz - President, Chief Executive Officer and Director.

      c)    Roderick M. Sherwood III - Executive Vice President and Chief Financial Officer.

      d)    William V. Campbell - Director.

      e)    Michael S. Ovitz - Director.

      f)    Andrew S. Rechleff - Director.

10.     Defendants Goldman Sachs & Co. and Morgan Stanley & Co. were joint book-running managers for the Offering.  Set forth below are the underwriter defendants for the Offering and the number of shares to which each subscribed:

3

| Underwriters | Number of Shares |
|---|---|
| Goldman, Sachs & Co. | 9,200,000 |
| Morgan Stanley & Co. Incorporated | 9,200,000 |
| Thomas Weisel Partners LLC | 3,560,000 |
| Epoch Securities, Inc. | 1,780,000 |
| Allen & Company Incorporated | 210,000 |
| CIBC World Markets Corp. | 210,000 |
| Dain Rauscher Incorporated | 210,000 |
| Raymond James & Associates, Inc. | 210,000 |
| Robertson Stephens, Inc. | 210,000 |
| Wit SoundView Corporation | 210,000 |
| Total | 25,000,000 |

## CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class") consisting of all persons and entities who acquired the common stock of Loudcloud pursuant or traceable to the false and misleading Prospectus between March 8, 2001 and May 1, 2001 (the "Class Period").  Excluded from the Class are defendants herein, members of the immediate family of each of the individual defendants, any subsidiary or affiliate of any defendant, and the directors, officers, and employees of any defendant or their subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

12.     Members of the Class are so numerous that joinder of all members is impracticable.  Specifically:

    a.     There were 25 million shares of Loudcloud common stock issued pursuant to the Prospectus; and

    b.     While the exact number of Class members is unknown to the plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of Class members who acquired Loudcloud shares pursuant to the Prospectus.

13.     Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and the other members of the Class have sustained damages because of defendants' unlawful activities alleged herein.  Plaintiff has retained counsel competent and experienced in

class and securities litigation and intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by plaintiff. Plaintiff has no interests which are contrary to or in conflict with those of the Class plaintiff seeks to represent.

14. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

15. Common questions of law and fact exist as to all members of the Class which predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether Section 11 of the Securities Act was violated by defendants' acts as alleged herein;

    b. whether the Prospectus contained false and misleading information;

    c. whether defendants participated directly or indirectly in the course of conduct complained of herein; and

    d. whether the members of the Class have sustained damages as a result of defendants' conduct, and the proper measure of such damages.

## CONTROLLING PERSON LIABILITY

16. The Individual Defendants, by reason of their executive positions and board membership were controlling persons of the Company and had the power and influence, and exercised the same, to cause Loudcloud to engage in the conduct complained of herein. Thus, the Individual Defendants controlled the public dissemination of the false and misleading information in the Prospectus and were controlling persons of the Company as set forth in Section 15 of the Securities Act.

## SUBSTANTIVE ALLEGATIONS

17. Defendant Morgan Stanley, on February 9, 2000, purchased 66,000 units, at a per unit price of 683.9, of 13% Senior Discount Notes (the "Notes") for an aggregate amount of $45.1 million. In connection with the issuance of these Notes, the Company also issued detachable warrants to Morgan Stanley to purchase an aggregate 1.2 million shares of common

stock at an exercise price of $0.02 per share.

18. On or about September 22, 2000, Loudcloud filed with the SEC a Registration Statement for 10 million shares of common stock at $10-$12 per share. On or about February 19, 2001, Loudcloud filed a Form S-1/A with the SEC that increased the number of shares to be offered to 20 million and lowered the range of the stock price to $8-$10. On or about March 6, 2001, Loudcloud filed another Form S-1/A with the SEC that increased the number of shares to 25 million and lowered the price to $6 per share, at which price Loudcloud sold shares to the public (except for undisclosed shares sold to insiders) on March 8, 2001.

19. The Prospectus described Loudcloud's business as follows:

> We offer business a new class of Internet infrastructure services. Using out Opsware technology, which automates formerly manual tasks associated with development and maintenance of Internet operations, we provide a suite of Internet operations for critical business functions. These manual tasks include configuring hardware with the appropriate operating system, testing the stability of the hardware within the overall operational environment, managing the performance of the hardware and software on an ongoing basis and expanding the capabilities of the infrastructure. Our Opsware technology allows us to centrally and consistently deploy and maintain our customers' Internet operations across multiple locations, with less manual intervention than would traditionally be required. We generate revenue from the sale of our services, which incorporate the technology infrastructure and the deployment and maintenance expertise required to support and expand the scope of customer's Internet operations. (Prospectus at 3).

20. Throughout the Prospectus, there are numerous references to the planned <u>expansion</u> of Loudcloud, including the following:

> (i)   We plan to <u>expand</u> the geographic scope of the Loudcloud Infrastructure Network and to <u>extend</u> the capabilities to our Opsware technology. We also intend to continue to invest in the development and integration of <u>additional</u> services and to <u>expand</u> the scope of services we provide.

(Prospectus at 3) (emphasis added).

> (ii)  Some of [the risks related to our business] relate to our potential inability to:
>
> • <u>acquire</u> and deploy a sufficient number of customers to achieve profitability;
>
> • successfully provide high levels of service quality to our existing customers as we <u>expand</u> the scale of our business;
>
> • develop <u>new</u> service offerings that complement our existing

            offerings;

- <u>extend</u> our Opsware technology to further automate and reduce the costs of many of the processes required to deploy and support our customers;

- infrastructure that we will require in order to accommodate customer growth;

- <u>acquire</u> our license third-party technologies and services that we require to deliver our services; and

- <u>increase</u> our brand awareness.

(Prospectus at 8) (emphasis added).

    (iii)    We have rapidly <u>expanded</u> our business since we were founded in September 1999. We have <u>increased</u> our number of employees from 71 at January 31, 2000, to 147 at April 30, 2000, and to 586 at January 31, 2001. This <u>growth</u> has placed, and will continue to place, a significant strain on our employees, management systems and other resources. We expect our business to continue to <u>grow in terms of headcount</u>, geographic scope, number of customers and number of services we offer. There will be additional demands on our customer service support, research and development, sales and marketing and administrative resources as we try to <u>increase</u> our service offerings, expand our geographic scope and expand our target markets. The strains imposed by these demands are magnified by our limited operating history. We may not be able to successfully manage our <u>growth</u>. In order to manage our <u>growth</u> successfully, we must:

- <u>improve</u> and <u>add</u> to our management, financial and information systems and controls and other elements of our business process infrastructure;

- maintain a high level of customer service and support; and

- <u>expand</u>, retain, train, manage and integrate <u>our employee base</u> effectively.

    Any failure by us to effectively manage our <u>growth</u> could disrupt our operations or delay execution of our business plan and consequently harm our business.

(Prospectus at 10) (emphasis added).

    If we do not continue to <u>expand</u> our direct and indirect sales organizations, we will have difficulty acquiring and retaining customers.

(Prospectus at 15) (emphasis added).

    (iv)    We are committing significant resources to our international operations and sales and marketing activities. For example, we have just recently commenced operations in the United Kingdom. <u>In addition, we plan to expand our presence more broadly in Europe and the Asia-Pacific region and may also expand into Latin America</u>.

(Prospectus at 17) (emphasis added).

7

COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

W:\DOCS\LOUDCLD\PLD\COMPLAIN.WPD

    (v)    We expect that our cost of revenue will increase significantly as we continue to deploy additional customers, <u>increasing headcount</u> and lease additional third-party data center in multiple locations.

(Prospectus at 30) (emphasis added).

    (vi)    Our strategy is to establish Loudcloud as the leading provider of Internet infrastructure services that enable reliable, high-quality, scalable, global and secure Internet operations. To achieve the strategy we intend to:

- <u>Expand</u> the Loudcloud Infrastructure Network;
- <u>Extend</u> our automation technology leadership position;
- Further <u>broaden</u> our service offerings;
- <u>Expand</u> services for our target customer segments; and
- <u>Further</u> extend the scope of supported technologies.

(Prospectus at 38-39) (emphasis added).

    (vii)    As of January 31, 2001, we had 586 full-time employees. <u>We expect to hire substantial numbers of new employees in the foreseeable future</u>. Our future success will depend upon our ability to attract, integrate, retain and motivate highly qualified technical and management personnel, for whom competition is intense.

(Prospectus at 47) (emphasis added).

21.    The Offering was not fully subscribed and certain defendants on March 8, 2001 purchased 1,295,000 shares, or nearly $8 million worth of stock, as follows:

|  | Shares | Amount |
|---|---|---|
| Marc Andreessen | 500,000 | $3,000,000 |
| Michael Ovitz | 100,000 | 600,000 |
| Benchmark Capital | 695,000 | 4,170,000 |
| Total | 1,295,000 | $7,770,000 |

22.    Andreessen and Benchmark had previously purchased millions of Loudcloud shares at much lower prices. Andreessen bought at least 8 million shares at $0.33 each and Benchmark bought some 9.2 million Series B preferred shares for as little as $1.68 each.

23.    On March 29, 2001 Zurich Scudder Investment and Thomas Weisel Partners (a defendant underwriter herein), announced they would wind down their joint venture, Scudder

8

COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

W:\DOCS\LOUDCLD\PLD\COMPLAIN.WPD

Weisel Capital Holding LLC, which was the parent of Scudder Weisel Capital. Scudder Weisel Capital Holding, was a customer of Loudcloud, contributing approximately 17% of the revenues for the first nine months of the Company's last fiscal year, or approximately $2.9 million over the life of the contract.

24. On April 4, 2001, Morgan Stanley admitted in an analyst report dated April 4, 2001, authored by Jeff Camp, that the Company was $25-50 million "short of fully-funded" because Loudcloud "raised less in its recent IPO than planned" but stated that the short-fall would be met by, among other things, "cost-cutting measures."

25. On May 1, 2001, Loudcloud, via a Business Wire release, announced cost-cutting restructuring, which involved, among other things, a workforce reduction of 19%, or 122 employees. The Company claimed that the action was taken "to allow the Company to reach cash flow breakeven with its existing cash and available financial resources."

26. Loudcloud's stock dropped from $6.43 on May 1, 2001, to $4.30 on May 7, 2001. It is presently selling at $1.63.

27. Loudcloud's restructuring was known at least as early as the Offering. Loudcloud's failure to raise enough money in the Offering to allow it to reach cashflow break-even made the restructuring a necessity. Loudcloud suffered no adverse results between March 8 and May 1, 2001 and was operating according to business plan. Loudcloud, on April 5, 2001, announced results for the fourth quarter revenue of $8.9 million and an operating loss of $37.4 million (excluding amortization of deferred stock compensation), exceeded the expectations that Defendant Morgan Stanley published in an analyst report dated April 4, 2001 and that Defendant Thomas Weisel published in an analyst report dated April 3, 2001. Defendant Epoch Partners, in an analyst report dated April 6, 2001, stated Loudcloud's fourth quarter did not divert significantly from estimates.

28. Loudcloud on June 13, 2001, announced results for the first quarter ending April 30, 2001. The results, which included $11.7 million in revenue, exceeded expectations. Defendant Morgan Stanley, in an analyst report dated June 13, 2001, stated Loudcloud

9
COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS
W:\DOCS\LOUDCLD\PLD\COMPLAIN.WPD

exceeded revenue and EBIDTA estimates for the April quarter.

## OMISSIONS AND MISSTATEMENTS

29.     As set forth more fully above the Prospectus was false and misleading in the following material aspects:

(i)     It failed to disclose that as of the effective date of the Prospectus, March 8, 2001, Loudcloud management was planning to down-size its operations, so that its work force would be substantially reduced.

(ii)    It failed to disclose that the public offering, which was for a lesser amount than planned, left Loudcloud short of the financing needed to bring it to free cash flow break even.

(iii)   It failed to disclose that the underwriters were unable to sell Loudcloud's entire offering to the public, but were forced to rely upon purchases by corporate insiders to make up the short-fall of nearly $8 million.

(iv)    It failed to disclose that Loudcloud's own business plan, upon which the public offering was based, demonstrated that the need for additional financing was a certainty, rather than only a possibility.

(v)     It falsely stated that it was intending to <u>increase</u> its work force.

(vi)    It failed to disclose the imminent cancellation of a contract with an affiliate of one of the underwriters of the Offering, involving an amount equal to approximately 17% of revenues.

(vii)   It listed Scudder Weisel as a customer without disclosing that it was about to become a <u>former</u> customer by cancellation of its contract.

**COUNT I**
**(Against All Defendants)**
**For Violation Of Section 11 Of The Securities Act Of 1933**

30.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

31.     Loudcloud is named as the issuer of the Loudcloud shares offered pursuant to the Prospectus filed with the SEC on or about February 16, 2000 and is therefore strictly liable to plaintiff and the Class.  The Individual Defendants are named in this Count as directors of Loudcloud on the date the Prospectus became effective and/or as persons who signed the Prospectus.

32.     The Underwriter Defendants are named in this Count as the underwriters with respect to the Offering.

33. As set forth above, there were untrue statements of material fact, or omissions of material fact, from the Prospectus.

34. This action is brought within one year after discovery of the untrue statements and omissions in and from the Prospectus should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Prospectus.

35. By virtue of the foregoing, plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

**COUNT II**
**(Against The Underwriter Defendants)**
**For Violation Of Section 12(a)(2) Of The Securities Act Of 1933**

36. Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein, except to the extent that any such allegation may be deemed to sound in fraud.

37. This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class against the Underwriter Defendants.

38. The statements referred to herein above were each made in a "prospectus" as that term is defined in Section 2(a)(10) of the Securities Act, 15 U.S.C. § 77b(a)(10), contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. The Underwriter Defendants acted to sell shares of Loudcloud in the form of common stock by way of the Prospectus. The actions included participating in the preparation of the Prospectus and other materials used in the sale of Loudcloud shares.

39. Plaintiff and the other members of the Class purchased or acquired the Company's common stock pursuant to a Prospectus. Plaintiff and the other members of the class did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in or made in connection with the Prospectus.

40. By reason of the conduct alleged herein, the Underwriter Defendants violated Section 12(a)(2) of the Securities Act. Accordingly, purchasers who acquired the Loudcloud shares in the Offering and pursuant to the Prospectus have the right to rescind and recover the

consideration paid for the Company's shares and may rescind and tender their shares of the Company to the defendants sued herein. Class members who have sold their Loudcloud shares are entitled to rescissory damages.

41. Less than three years has elapsed from the time that the securities upon which this Count is brought were sold to the public to the time of the filing of this action. Less than one year has elapsed from the time when plaintiff discovered or reasonably could have discovered the facts upon which this Count is based to the time of the filing of this action.

**COUNT III**
**(Against The Individual Defendants)**
**For Violation Of Section 15 Of The Securities Act Of 1933**

42. Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein, except to the extent that any such allegation may be deemed to sound in fraud.

43. The Individual Defendants are alleged to be Control Persons with respect to the Offering of Loudcloud shares or through stock ownership, agency or otherwise.

44. Because of their positions of control with respect to the Offering and their knowledge of Loudcloud's business, they are control persons within the meaning of Section 15 of the Securities Act.

45. By virtue of the foregoing, plaintiff and the other members of the Class are entitled to damages against the Individual Defendants, jointly and severally.

**COUNT IV**
**(Against The Underwriter Defendants)**
**For Violations Of Section 10(b) Of The 1934 Act And Rule 10b-5 Promulgated Thereunder**

46. Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

47. During the Class Period, defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Loudcloud common stock; and (iii) cause plaintiff and other members of the Class to purchase Loudcloud stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and

1 | each of them, took the actions set forth herein.

2 |     48.    These defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Loudcloud common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. These defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

    49.    In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

    50.    Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Offering of Loudcloud common shares of Loudcloud stock as specified herein, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Loudcloud securities during the Class Period.

    51.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them.

    52.    Such defendants' material misrepresentations and/or omissions were done

knowingly or recklessly and for the purpose and effect of concealing, <u>inter alia</u>, (a) that the Underwriter Defendants received additional, excessive and undisclosed commissions from their customers in exchange for allocations of Offering stock; (b) that the Underwriter Defendants had arranged for their customers to purchase Loudcloud shares in the after-market, which artificially inflated and sustained the after-market price of the Offering shares and thereby benefitted the Underwriter Defendants; and (c) that the Underwriter Defendants also received undisclosed commissions in the form of excessive commissions from its customers in connection with the purchase of other securities.

53. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Loudcloud's common stock was artificially inflated during the Class Period. In ignorance of the fact that the market price of Loudcloud's shares were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Loudcloud common stock during the Class Period at artificially inflated high prices and were damaged thereby.

54. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known that the price of Loudcloud shares had been artificially inflated by the defendants' fraudulent scheme, plaintiff and other members of the Class would not have purchased or otherwise acquired their Loudcloud common stock during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55. By virtue of the foregoing, the defendants each violated Section 10(b) of the exchange Act and Rule 10b-5 promulgated thereunder.

56. As a direct and proximate result of defendants' wrongful conduct, plaintiff and

the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## COUNT V
### (Against the Individual Defendants)
### Pursuant to Section 20(a) of the Exchange Act

57.  Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

58.  The Individual Defendants acted as controlling persons of Loudcloud within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the underwriting of Loudcloud's Offering, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Loudcloud, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of Loudcloud's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.  In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of Loudcloud and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations herein, and exercise the same.

60.  As set forth above, Loudcloud and the Individual Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases and/or sales of Loudcloud stock during the Class Period.

**WHEREFORE**, plaintiff, on behalf of himself and on behalf of the Class, prays for

judgment as follows:

    A.    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying plaintiff as class representative of the Class and its counsel as class counsel;

    B.    Against defendants, jointly and severally for damages suffered, as a result of defendants' violation of the securities laws;

    C.    Awarding plaintiff and the members of the Class, prejudgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs;

    D.    Awarding recission or recessionary damages to members of the Class who no longer hold their Loudcloud stock; and

    E.    Awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 5, 2001

Kevin J. Yourman
WEISS & YOURMAN

By: _____
Kevin J. Yourman
10940 Wilshire Boulevard
24th Floor
Los Angeles, CA 90024
(310) 208-2800

Joseph H. Weiss
WEISS & YOURMAN
551 Fifth Ave.
Suite 1600
New York, NY 10176
(212) 682-3025

Counsel for Plaintiffs

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Bruce Molholt, hereby certify that the following is true and correct to the best of my current knowledge, information and belief:

1. I have reviewed the complaint styled Eid Haddad v. Loudcloud, Inc., et al., U.S.D.C., Southern District of New York, which was filed on behalf of all others similarly situated. If necessary, I authorize the filing of a similar complaint on my behalf.

2. I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that the litigation is not settled, this is not a claim form, and sharing in any recovery is not dependent upon execution of this Certification.

4. To the best of my current knowledge, the following are all my transactions in Loudcloud, Inc. securities during the period from March 8, 2001 through May 1, 2001 (the "Class Period"):

| Date | Purchased or Sold | No. of Shares | Price per Share |
|---|---|---|---|
| 3/12/01 | Purch. | 4000 | 6 1/32 |
| 3/16/01 | " | 1250 | 4 1/32 |
| | " | 100 | 4 1/64 |
| 4/11/01 | " | 50 | 5.20 |

5. During the last three years, I have not served or sought to serve as a class representative in any case brought under the federal securities laws.

6. I have not been promised any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

Signed under penalty of perjury this 26th day of Sept, 2001.

_____
Bruce Molholt